# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| ALLISA S. MASON, } | |
| } | |
| Plaintiff, } | |
| } | |
| v.  } | Case No.: 5:07-CV-0369-RDP |
| } | |
| MICHAEL J. ASTRUE, } | |
| Commissioner of Social Security } | |
| } | |
| Defendant. | |

## MEMORANDUM OF DECISION

Plaintiff Allisa S. Mason brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability insurance benefits under Title II of the Act. *See* 42 U.S.C. § 405(g). For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed because it is supported by substantial evidence and proper legal standards were applied.

### I. Procedural History

Plaintiff filed her application for a period of disability and disability insurance benefits on April 4, 2002. (Tr. 74-77). Plaintiff's application was accepted and on May 31, 2002, the state agency determined that Plaintiff was disabled beginning on October 16, 2001, due to impairments which met the requirements of Medical Listing 8.04. (Tr. 25-26). Later, a continuing disability review determined that Plaintiff's disability ceased in June 2005 based on her medical improvement. (Tr. 27-28). Plaintiff was informed that her disability payments would terminate at the end of August 2005. (Tr. 27-28). Plaintiff then requested a hearing before an Administrative Law Judge

("ALJ"). (Tr. 59-60). Plaintiff's case was heard by ALJ Earle C. Cates on February 9, 2006. (Tr. 407). Plaintiff waived her right to legal representation in the hearing. (Tr. 80, 409-11). In his March 27, 2006 decision, ALJ Cates determined that Plaintiff was not eligible for a period of disability or disability insurance benefits because she failed to meet the disability requirements of the Act and retains the capacity for work that exists in significant numbers in the national economy. (Tr. 20). The Appeals Council denied Plaintiff's request for review of ALJ Cates' decision on May 16, 2006, and therefore, ALJ Cates' decision is a proper subject for this court's review. (Tr. 7-9).

At the time of the hearing, Plaintiff was forty-two years old and had a high school education. (Tr. 415, 417). Prior to her disability, Plaintiff worked as a certified nurse's aide and as a short order cook. (Tr. 418, 423). Plaintiff alleges that she continues to be disabled and is still unable to engage in substantial gainful activity. (Tr. 15).

## II. Medical History

Plaintiff was diagnosed by bronchoscopy with pulmonary/disseminated blastomycosis, a fungal infection, in November 2001. (Tr. 289-303). In February 2002, a core biopsy of the left distal tibia showed "rare large refractile yeast forms," and those findings were consistent with the clinical history of blastomycosis. (Tr. 285, 288, 296-97). The medical evidence indicates that Plaintiff's condition involved the tibia in both legs, lungs, skin, and chronic swelling and pain of her ankles. (Tr. 304). In May 2002, Plaintiff had chronic infections of the skin or mucous membranes with extensive fungating or extensive ulcerating skin lesions that persisted for at least three months despite continuing prescribed treatment. (Tr. 292, 304). At that time, Plaintiff required a wheelchair, walker or crutches. (Tr. 16). However, since May 2002, evidence shows that Plaintiff's blastomycosis has responded favorably to treatment and that she is no longer taking medication for

that specific condition. (Tr. 16). Plaintiff is able to walk without assistance but she uses an electric cart at Wal-Mart. (Tr. 16).

In October 2004, treating rheumatologist, R. Macon Phillips, M.D., of Rheumatology Associates of North Alabama found lower extremity pain and observed that peripheral neuropathy should be considered. (Tr. 329-30). He also noted that Plaintiff had arthralgia, lower extremity more than upper; probable osteoarthritis; probable fibromyalgia; and a history of blastomycosis. (*Id.*). In March 2005, Dr. Phillips found full range of motion and no synovitis. (Tr. 17). Additionally, he reported that the "arthralgia in the ankle is probably from the previous bone involvement from the blastomycosis." (Tr. 327).

Dr. Muhammad Iqbal, another of Plaintiff's treating physicians, diagnosed Plaintiff with obstructive sleep apnea, hypertension, allergic rhinitis, and arthritis of the right knee. (Tr. 17-18, 374-75). Additionally, in 2004 Dr. Iqbal diagnosed Plaintiff with chronic vasculitis, possible peripheral neuropathy, chronic anemia, persistent weight gain, and depression. (Tr. 349-52). In 2005, Dr. Iqbal diagnosed Plaintiff with pedal edema and fibromyalgia. (Tr. 388). Also, Dr. Edward M. Turpin, Plaintiff's treating physician from the Sleep Disorders Center of Decatur General Hospital, found Plaintiff suffered from obstructive sleep apnea syndrome. (Tr. 392).

On June 16, 2005, Dr. Marlin D. Gill, a consultative medical examiner, saw Plaintiff and diagnosed her with bilateral chronic lower extremity pain, osteoarthritis, and fibromyalgia. (Tr. 305). At the time, Plaintiff was 64 inches tall and weighed 212 pounds. (Tr. 305). Plaintiff walked unassisted and without devices. (Tr. 305). "Her gait was normal but she walked slowly." (Tr. 306). Dr. Gill noted that Plaintiff can sit for thirty minutes at maximum, stand for 10 minutes maximum and walk a hundred yards at maximum. (Tr. 305). Plaintiff informed Dr. Gill that she can do some

light house cleaning and cooking with frequent breaks for resting. (Tr. 305). Dr. Gill commented that Plaintiff said that she can drive, take brief trips to the store for a few items of groceries at a time, and can take care of her own personal needs such as bathing, dressing, and eating. (Tr. 305).

Plaintiff alleges that if she were to work, she would need to be able to take at least one day off from work each month because of the pain from her condition. (Tr. 435-36). Plaintiff testified that she has burning, pain and stiffness in her legs. (Tr. 436). At the time of the hearing, Plaintiff was taking the following medications: Hydro Syrup, Acetaminophen, Ibuprofen, Hydrochlorothiazide, Loperamide, and Promethazine. (Tr. 17, 225).

### III.  ALJ Decision

As opposed to the five step analysis used to determine whether a claimant initially has a disability, the ALJ applied an analysis to determine whether Plaintiff still has a disability that meets the Act's requirements and whether her medical condition has improved to working ability. *See* 20 C.F.R. § 404.1594(a)  (Tr. 14-21).

> If the claimant has an impairment or combination of impairments that meets or equals the severity of an impairment listed in Appendix 1 of Part 404 of the Regulations. (20 C.F.R., Part 404, Subpart P), disability will continue.
> If not, the next step is to determine if the claimant has experienced medical improvement shown by a decrease in medical severity.
> If medical improvement has occurred, the undersigned must determine whether the it is related to the claimant's ability to do work; ie., whether there has been an increase in the residual functional capacity based on the impairment(s) that was present at the time of the most recent favorable medical determination.
> If the claimant has not experienced medical improvement or if the medical improvement is not related to her ability to work, the undersigned must consider whether any of the exceptions to medical improvement, as defined by the Regulations, apply.
> If medical improvement is shown to be related to ability to do work or if one of the first group of exceptions to medical improvement applies, the undersigned will determine whether all of a claimant's current impairments in combination are "severe" as defined by the Regulations. (*See* 20 C.F.R. § 404.1521).  This

>    determination will consider all of her current impairments and the impact of the combination of these impairments on ability to function.  When the evidence shows that all of a claimant's current impairments in combination do not significantly limit her physical or mental abilities to do basic work activities, these impairments will not be considered severe in nature, and the claimant will no longer be considered to be disabled.
>        If a claimant's impairment(s) are severe, the undersigned will assess her current ability to engage in substantial gainful activity in accordance with the Regulations.  (*See* 20 C.F.R. § 404.1561).  That is, a claimant's residual functional capacity will be assessed based on all current impairments, and the undersigned will consider whether she can still do work she did in the past.  If a claimant can perform past relevant work, disability will be found to have ended.
>        If a claimant cannot perform past relevant work, there is one last step.  Given a claimant's residual functional capacity assessment and considering her age, education, and past work experience, can she do other work?  If she can, disability will be found to have ended.  If not, disability will be found to continue.

(Tr. 15-16). (*See* 20 C.F.R. § 404.1594).

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that "the claimant must establish a *prima facie* case by demonstrating that [s]he can no longer perform h[er] former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted).  Once a claimant shows that she can no longer perform her past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

The ALJ found that Plaintiff met the disability insured status requirements of the Act on October 16, 2001 (Tr. 15, 20).  The ALJ determined that Plaintiff's disability ceased in June 2005 and her entitlement to disability insurance benefits ended at the end of August 2005. (Tr. 15, 20). Based upon Plaintiff's medical records, the ALJ concluded that Plaintiff has chronic vasculitis, osteoarthritis of the right knee and ankle, status post disseminated blastomycosis, fibromyalgia, obstructive sleep apnea, hypertension, and obesity, which are

5

"severe" impairments as defined by the Act. (Tr. 20). Nonetheless, the ALJ determined that Plaintiff's impairments neither meet nor equal the requirements in the Listing of Impairments, Appendix 1, Subpart P, Regulations No. 4. (Tr. 16, 17, 20). In order to find whether a claimant has experienced medical improvement, the ALJ must determine that there has been a decrease in medical severity that is "based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with the impairment(s)." (20 C.F.R. § 404.1594(b)(1). (Tr. 17). The determination must be compared to the time of the most recent favorable determination that the claimant was disabled, otherwise known as the comparison point determination. (20 C.F.R. § 404.1594(b)(7). (Tr. 16, 17). The ALJ found that May 31, 2002 was Plaintiff's comparison point determination. (Tr. 16, 20). The ALJ found that Plaintiff experienced medical improvement and no longer meets a listed impairment. (Tr. 17, 20). In addition, the ALJ concluded that because Plaintiff has shown an increase in functional capacity to do basic work activities, her medical improvement is related to her ability to work. (20 C.F.R. § 404.1594(c)(3)(i). (Tr. 17, 20).

According to the ALJ, Plaintiff's subjective complaints concerning her impairments and their impact on her ability to work are not fully credible due to the degree of inconsistency with the medical evidence established in the record and Plaintiff's own statements. (Tr. 18, 21). While there is evidence of an underlying medical condition, the ALJ found there is no objective evidence that shows Plaintiff's symptoms are as debilitating as she alleges or that her condition is of such severity that it can reasonably be expected to cause such dysfunction as to preclude all work activity. (Tr. 18). After consideration of all the medical evidence, including Plaintiff's subjective complaints, the ALJ found that Plaintiff

retains the residual functional capacity to perform the exertional demands of some sedentary work activities with the following limitations: she can lift 10 pounds occasionally; sit 30 minutes uninterrupted; stand for 10 minutes uninterrupted; she is limited in the ability to walk and must have the option to sit or stand at will throughout the day. (Tr. 19, 21).

The ALJ called a vocational expert ("VE") to testify who was present throughout the hearing and familiar with Plaintiff's background. (Tr. 19-21). The VE testified that an individual with Plaintiff's limitations could perform jobs which exist in significant numbers in the regional and national economies. (Tr. 19-21). Plaintiff herself testified that she could perform work such as a parking lot attendant if she were hired. (Tr. 18, 424). Thus, the ALJ ruled that Plaintiff is not disabled as that term is defined in the Act and that Plaintiff, therefore, is not entitled to disability insurance benefits. (Tr. 15, 20, 21).

### IV.  Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision, following the denial of review by the Appeals Council, reversed, or in the alternative, remanded for further consideration. (*See* Pl.'s Mem. at 2-3). Plaintiff argues that the ALJ's assessment of her residual functional capacity is incomplete and lacks the specificity contemplated under the Act as necessary to allow an adjudicator to make an informed judgment regarding the issues of the claim. (*See* Pl.'s Mem. at 5-7). Additionally, Plaintiff argues that the ALJ failed to properly consider her chronic pain under the Eleventh Circuit's pain standard. (*See* Pl.'s Mem. at 7-9).

### V.  Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision,  *see* 42 U.S.C. § 405 (g); *Walden v. Schweiker*, 672 F.2d 835,

838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701. For the reasons set forth below, the ALJ's decision denying Plaintiff benefits is due to be affirmed.

## VI. Discussion

In light of the legal standards that apply in this case, this court rejects Plaintiff's arguments for remand and reversal. For the reasons outlined below, the court finds that the ALJ relied on substantial evidence and the proper legal standards were applied.

      **A.**      **The ALJ's Residual Functional Capacity is Complete and Does Not Lack the Specificity Contemplated Under the Social Security Regulations as Necessary to Allow an Adjudicator to Make an Informed Judgment Regarding the Issues of the Claim.**

Plaintiff's first argument is that the ALJ's assessment of her residual functional capacity is not specific enough to make an informed judgment under the Act. (*See* Pl.'s Mem. at 6). Defendant argues that the ALJ made a complete assessment of Plaintiff's residual functional capacity and that the ALJ applied the correct legal standards. (*See* Def.'s Mem. at 4-8).

The ALJ first must determine whether Plaintiff is still disabled continuing from her initial disability determination. The method used to determine this is not the five step standard used for the initial determination of Plaintiff's disability, but rather the proper method is to determine whether there has been any medical improvements in her impairments and if so, whether those improvements enable her to work and disqualify her from disability. *See* 20 C.F.R. § 404.1594.

Under this method, the ALJ must first determine whether there has been any medical improvement in Plaintiff's impairments and, if so, whether this medical improvement is related to her ability to work. *See* 20 C.F.R. § 404.1594. If Plaintiff's impairments have not medically improved, the ALJ must consider whether one or more of the exceptions to medical improvement applies. *Id.* If medical improvement related to Plaintiff's ability to work has not occurred and no exception applies, her benefits will continue. *Id.* However, where medical improvement related to Plaintiff's ability to work has occurred or an exception

applies, the Commissioner must also show that Plaintiff is currently able to engage in substantial gainful activity before the ALJ can find that she is no longer disabled. *Id*.

Medical improvement is any decrease in the medical severity of a claimant's impairments which were present at the time of the most recent favorable medical decision that the claimant was disabled or continued to be disabled. *See* 20 C.F.R. § 404.1594. The most recent favorable medical decision is also the point of comparison in determining a medical improvement. *Id.* There must be changes or improvements in the symptoms, signs, and laboratory findings associated with a claimant's medical improvements before the ALJ can make a determination of medical improvement. *Id*.

The ALJ determined that Plaintiff's comparison point was May 31, 2002 because it was at that time Plaintiff received the favorable determination that she was disabled. (Tr. 16, 20). As of May 2002, Plaintiff was found to have impairments that met the disability requirements under the Act. (Tr. 16). Plaintiff's medical impairments included chronic infections of the skin or mucous membranes, with extensive fungating or extensive ulcerating skin lesions that persisted for at least three months. (Tr. 16). At the comparison point, Plaintiff required a wheelchair, walker or crutches. (Tr. 16). In November 2001, prior to that comparison point, Plaintiff was diagnosed by bronchoscopy with pulmonary/ disseminated blastomycosis, a fungal infection. (Tr. 16). Later, in February 2002, Plaintiff had a core biopsy of the left distal tibia which showed "rare large refractile yeast forms" which is consistent with blastomycosis. (Tr. 16). At that time, Plaintiff's condition involved the tibia in both legs, lungs, skin, and she had persistent/chronic pain and swelling of her ankles. (Tr. 16).

However, during the time between May 2002, the comparison point decision, and June 2005, the determination of disability cessation, the evidence shows that Plaintiff's blastomycosis responded to treatment. (Tr. 16). Plaintiff no longer takes medication for this condition, and is able to walk unassisted. (Tr. 16). The ALJ found that Plaintiff does not meet the requirements of Medical Listing 8.04 based on the resolution of the blastomycosis. (Tr. 16). However, Plaintiff still has what are considered to be "severe" impairments under the Act and Regulations. (Tr. 18). She has chronic vasculitis, osteoarthritis of the right knee and ankle, status post disseminated blastomycosis, fibromyalgia, obstructive sleep apnea, hypertension, and obesity. (Tr. 18). The ALJ made a finding that the "medical evidence establishes that the claimant has experienced medical improvement." (Tr. 20, Finding 4).

Even though Plaintiff's medical condition improved, the improvements must also increase her ability to work. 20 C.F.R. § 404.1594. Plaintiff testified that her daily living consists of watching television, reading, and listening to the radio. (Tr. 17). She testified that she cooks one meal a week, and does two loads of laundry a week with her daughter doing the bulk of the laundry. (Tr. 17). Every two weeks, Plaintiff goes shopping for groceries with her daughter and she attends church every Sunday. (Tr. 17). She also testified she can walk unassisted, *i.e.*, without using devices. (Tr. 18). A consultative medical examiner, Dr. Marlin D. Gill, saw Plaintiff on June 16, 2005 and determined that she had a normal gait but she walked slowly. (Tr. 18). The Regulations state that if a claimant no longer meets or equals the same listing section used to make the comparison point determination, the medical improvement was related to her ability to work. (See 20 C.F.R. §§ 404.1594 (a), (b)(1)(3), (c)(3)(i)). (Tr. 17). The ALJ found that Plaintiff's medical improvement is related to her ability to work. (Tr. 20, Finding No. 4).

Once a claimant's medical improvement related to her ability to do work is resolved, then the ALJ must determine at what level of work the claimant can perform. The ALJ must determine the claimant's residual functional capacity based on all of the relevant evidence. *See* 20 C.F.R. § 404.1545, § 404.1546. Sedentary work requires the ability to lift at least 10 pounds, and occasionally lift or carry articles such as docket files, ledgers, and small tools. SSR 96-9p. While sedentary jobs often involve sitting, a certain amount of walking and standing are often necessary but occasional. *Id.* "Occasionally" is defined under the Regulations as occurring from very little up to one third of the time, and would generally total no more than about two hours of an eight-hour workday. *Id.* The Social Security Regulations provide that "a finding that an individual has the ability to do less than a full range of sedentary work does not necessarily equate with a decision of 'disabled.'" *Id.* "If the performance of past relevant work is precluded by a residual functional capacity for less than the full range of sedentary work, consideration must still be given to whether there is other work in the national economy that the individual is able to do, considering age, education, and work experience." *Id.* If a claimant is able to perform a reduced range of sedentary work but not the full range, the ALJ must cite examples of occupations and jobs within the region that the claimant can perform within her abilities. *Id.*

In making a residual functional capacity assessment, the ALJ must describe how the evidence supports each conclusion, citing specific medical and non-medical evidence. SSR 96-8p. Additionally, the ALJ must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case

record.  *Id.*  If there are any material inconsistencies or ambiguities in the evidence, the ALJ must explain how they were considered and resolved.  *Id.*

In the present case, the ALJ determined that Plaintiff's residual functional capacity is as follows:  she can lift 10 pounds occasionally; can sit 30 minutes uninterrupted; stand for 10 minutes uninterrupted; is limited in the ability to walk and must have the option to sit or stand at will throughout the day.  (Tr. 21, Finding 8).  Plaintiff's residual functional capacity is specific as to her abilities and the ALJ stated that she could perform less than sedentary work activities, but still carry out some sedentary work activities.  (Tr. 19).  Dr. Gill noted during his examination of Plaintiff on June 20, 2005, that she can sit for 30 minutes, stand for 10 minutes, and walk 100 yards.  (Tr. 305).

Additionally, the ALJ took Plaintiff's testimony into consideration when assessing her residual functional capacity.  In doing so, the ALJ found that "claimant's allegation regarding her limitations are not totally credible." (Tr. 21, Finding 7).  The ALJ assessed the opinions of Plaintiff's treating physicians, Dr. Muhammad Iqbal, Dr. R. Macon Phillips, Dr. Edward M. Turpin, and the consultative medical examiner, Dr. Marlin D. Gill, and noted their descriptions of Plaintiff's medical impairments.  The ALJ explained that the debilitation Plaintiff described is inconsistent with her activities of daily living.  (Tr. 19).  Moreover, Plaintiff herself testified that if she were hired, she would be able to work as a parking lot attendant.  (Tr. 18).

After making the finding that Plaintiff could perform less than sedentary work, the ALJ consulted a VE to determine whether Plaintiff could make a vocational adjustment to other jobs existing in significant numbers in the national economy.  (Tr. 19, 21).  Plaintiff cannot perform her past relevant work as a nurse or short order cook, nor does she have transferrable skills to perform

13

within her residual functional capacity. (Tr. 19, 21). However, the ALJ found from the VE's testimony that Plaintiff could make a vocational adjustment to other jobs and that there were jobs existing in significant numbers in the national economy. (Tr. 20, 21). The ALJ named some of those jobs within the region such as a surveillance system monitor, order clerk, information clerk, and a parking lot attendant. (Tr. 21).

The ALJ's residual functional capacity assessment is adequate and proper under the Act. The ALJ followed the proper procedure in finding that Plaintiff can perform less than sedentary work activities and that there are those kinds of jobs in significant numbers both within the regional and national economies.

### B. The ALJ Properly Considered Plaintiff's Complaints of Chronic Pain Under the Eleventh Circuit Standard.

Plaintiff's second argument is that if the ALJ had properly considered the medical evidence, he would have found that Plaintiff's medical condition is of such severity that it can reasonably be expected to cause her alleged pain. (*See* Pl.'s Mem. at 8). Plaintiff maintains that the medical record before the ALJ constitutes objective evidence that corroborates her testimony and that the doctors' diagnoses are consistent with her description of her pain. (*See* Pl.'s Mem. at 8).

The Eleventh Circuit has established a three part pain standard test to evaluate a claimant's pain objectively in order to determine whether the claimant's pain qualifies as a disability. The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such severity that it can reasonably be expected to cause the alleged pain. *Foote v. Charter*, 67 F.3d at 1560, 1553 (11th Cir. 1995); *Holt v. Sullivan*,

921 F.2d. 1221, 1223 (11th Cir. 1991); *Landry v. Heckler*, 782 F.2d. 1551, 1553 (11th Cir. 1986). Even though the standard requires objective evidence of the medical condition, the pain standard does not require objective proof of the pain itself. *Elam v. Railroad Retirement Board*, 921 F.2d. 1210, 1215 (11th Cir. 1991). Furthermore, the Eleventh Circuit has held that it is implicit in any evaluation of subjective complaints of pain that the ALJ's reasoning be supported by substantial evidence. *Hale v. Bowen*, 831 F.2d 1007 (11th Cir. 1987). The ALJ may examine the claimant's daily activities for consideration. *See Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987); 20 C.F.R. § 404.1529(c)(i); SSR 97-7p, 61 Fed. Reg. at 34485. However, in *Lewis v. Callahan*, the court found that participation in daily activities does not disqualify a claimant from disability, nor is it inconsistent with subjective allegations of disabling symptoms. *Lewis v. Callahan*, 125 F.3d 1436 (11th Cir. 1997).

Plaintiff argues that both parts of the pain standard are met and lists her doctors' diagnoses, as well as her statements that she has pain in her lower extremities. (*See* Pl.'s Mem. at 8). Furthermore, Plaintiff asserts that her testimony as to the severity of her pain is consistent with the evidence from her treating physicians and the administrator's consultant examiner. (*See* Pl.'s Mem. at 8).

Defendant responds by stating that the ALJ considered all of the objective evidence from Plaintiff's medical records, such as treating physicians' comments, consulting examiner's comments, and treatment, as well as Plaintiff's own testimony about her condition and daily activities. (*See* Def.'s Mem. at 10-12). Furthermore, Defendant argues that the ALJ applied the standard appropriately and properly considered all of the evidence. (*See* Def.'s Mem. at 10-12).

In his decision, the ALJ applied the pain standard and found that while Plaintiff met part one of the standard, she failed to meet part two. (Tr. 18). Plaintiff did have the stated underlying medical conditions, but the ALJ found that there was no objective evidence to show that her symptoms are as debilitating as she alleges, or that her condition is of such severity that it can reasonably be expected to cause such dysfunction as to preclude all work activity. (Tr. 18). The ALJ found that the debilitation that Plaintiff described was inconsistent with her description of daily activities: "performing some household chores, attending church, watching television, and going to the store." (Tr. 19). In *Dyer v. Barnhart*, the court found that the ALJ properly explained his reasons for rejecting the claimant's subjective complaints of disabling pain, as inconsistent with evidence regarding the claimant's daily activities, with types and dosages of medication, and the frequency of doctor visits for medical treatment or complained of such pain to his doctor during the visits. *Dyer v. Barnhart*, 395 F.3d. 1206 (11th Cir. 2005). The court found that the ALJ must clearly articulate explicit and adequate reasons for discrediting a claimant's allegations of disabling symptoms, but the ALJ is not bound to cite particular phrases or formulations. *Id*.

Even though Plaintiff alleges having severe pain and the medical evidence contains doctors' comments that Plaintiff complained of pain, she admitted that she could work as a parking lot attendant and was able to perform daily activities. (Tr. 19). The ALJ found that there was no objective evidence to show that Plaintiff's pain is as debilitating as she alleges or that her condition is so severe as to cause such dysfunction as to preclude all work activity. (Tr. 19). It is not the impairments themselves, but rather the functional limitations or restrictions caused by the medical impairments and their related symptoms, that affect an individual's ability to work. *See* SSR 96-9p, 61 Fed. Reg. 34475 (1996); *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). The ALJ did

not dismiss the allegations that Plaintiff had pain, but rather found that her pain and her impairments were not so severe as to prevent her from working. That is, the ALJ found Plaintiff's complaints not credible, and gave detailed reasons for doing so. (Tr. 18-20, Tr. 21, Finding 7). The ALJ properly applied the appropriate legal standards and his findings are supported by substantial evidence.

## VII.  Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to affirmed, and a separate order in accordance with the memorandum of decision will be entered.

**DONE** and **ORDERED** this ___23rd___ day of June, 2008.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE